IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                 Cr. No. 18-2212 KG

JOSE VELARDE-PAVIA,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendant's Motion to Suppress Illegally Obtained Evidence and its accompanying Memorandum in Support (collectively, Motion to Suppress), filed August 6, 2018. (Doc. 26). The United States responded on August 17, 2018. (Doc. 28). On October 10, 2018, the Court set a hearing on the Motion to Suppress for November 8, 2018. (Doc. 37).

On October 16, 2018, the United States filed a Motion to Vacate Hearing and Rule on the Pleadings, in which the United States moved to vacate the Motion to Suppress hearing and moved the Court to decide the Motion to Suppress on the briefs. (Doc. 38). Defendant did not respond to that motion. On October 31, 2018, the Court vacated the hearing on the Motion to Suppress, thereby mooting the Motion to Vacate Hearing and Rule on the Pleadings. (Doc. 41).

Having considered the briefing, the applicable law and the evidence, the Court **DENIES** the Motion to Vacate Hearing and Rule on the Pleadings as moot and **DENIES** the Motion to Suppress.

1

I.     *Background*

On June 7, 2018, Roswell Police Department Agent G. Juarez obtained a search warrant for a 2008 white Toyota truck registered to Defendant and to his sister, Arianna Garcia, with a New Mexico license plate number LDN-973. (Doc. 38-1) at 1-2. In his affidavit in support of the search warrant application, Agent Juarez stated that he sought permission to search for "[c]ontrolled substances . . . namely [m]ethamphetamine," among other related items of interest. *Id.* at 2.

Agent Juarez attested that he had "met with a reliable, credible and confidential informant" (CI) who had assisted him and other law enforcement personnel "by providing information, on more than three separate occasions that has led to the recovery of controlled substances." *Id.* at 3. Specifically, Agent Juarez attested that the CI "personally witnessed the sale of controlled substances on more than three separate occasions while working for Agents with the Chaves County Metro Narcotics Task Force" and "personally purchased controlled substances for Agents with the Chaves County Metro Narcotics Task Force on more than three separate occasions." *Id.* Agent Juarez continued:

> Said informant has provided information which has proven to be truthful. Said informant has never provided false information to the knowledge of Affiant. Said informant has associated with known [m]ethamphetamine sellers and users and is familiar with the appearance of [m]ethamphetamine and how it is packaged and sold.

*Id.*

According to Agent Juarez, the CI told him that, within the past 72 hours, the CI saw Defendant selling methamphetamine from his vehicle. *Id.* Agent Juarez attested that the CI also told him that Defendant has "several residences where he stashes large amounts of narcotics." *Id.*

2

Furthermore, Agent Juarez attested that, within the last 72 hours, surveillance by Agents revealed that Defendant drove a white Toyota truck with a New Mexico license plate number of LDN-973 from 806 W. 11th Street in Roswell to a residence at 1500 W. Albuquerque Street, also, in Roswell. *Id.* at 4. Agent Juarez related that Agents observed Defendant outside of his Toyota truck speaking with a female outside the residence at 1500 W. Albuquerque Street. *Id.* Agent Juarez stated Agents also observed that shortly after arriving at 1500 W. Albuquerque Street, Defendant drove the Toyota truck back to 806 W. 11th Street, where the CI purchased methamphetamine from Defendant. *Id.* Agent Juarez indicated in the affidavit that the Agents learned from the CI that Defendant "had travelled to an unknown location to pick up methamphetamine." *Id.*

Additionally, Agent Juarez attested in the affidavit that "through prior investigations and surveillance" he knew that Defendant's sister lives at 1500 W. Albuquerque Street and Defendant's brother lives at 806 W. 11th Street. *Id.* Agent Juarez also attested that the CI told him that "there [were] several firearms in the residence" at 806 W. 11th Street. *Id.*

On June 11, 2018, members of the Chaves County Metro Narcotics Task Force stopped Defendant and searched the Toyota truck with New Mexico license plate number LDN-973. (Doc. 26) at 3. Agents found in the truck 136.1 grams of methamphetamine, a Smith and Wesson firearm with ammunition, and a Shooter Arms Manufacturing firearm with ammunition. (Doc. 28) at 1-2. During a search of Defendant, Agents found $80.00 in Defendant's left pocket, and $1,045.21 and documentation related to the Smith and Wesson firearm in Defendant's right front pocket. *Id.* at 2.

Also, on June 11, 2018, Agents executed search warrants for 1500 W. Albuquerque Street, 315 E. Forrest Street, and 806 W. 11th Street. (Doc. 28) at 2. At 1500 W. Albuquerque

Street, Agents found five firearms in an outside shed to which only Defendant had access. *Id.* Agents did not find anything of evidentiary value at either 315 E. Forrest Street or 806 W. 11th Street. *Id.*

On July 10, 2018, the United States indicted Defendant in this case for allegedly possessing 50 grams and more of methamphetamine with intent to distribute it, and knowingly carrying a firearm during the commission of that crime. (Doc. 16) at 1-2. This indictment is based on the drugs and guns found in Defendant's Toyota truck.

*II.    Analysis*

In his Motion to Suppress, Defendant asserts that the search warrant affidavit "contains falsehoods that are material to the finding of probable cause." (Doc. 26) at 6. Accordingly, Defendant argues that he is entitled to a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978), so the Court can "divine whether the remainder of the allegations contained in the [search warrant] affidavit have any basis in objective fact." (Doc. 26) at 7. Defendant first asserts that the CI's statement that Defendant has several residences where he stashed large amounts of narcotics was a "conclusory statement" because "no facts accompany that assertion in the affidavit." *Id.* at 6. Next, Defendant contends that Agent Juarez's "assertion that the CI conducted this 'controlled buy' is also specious" because "[t]here are no details in the affidavit about what amount was purchased and for how much. And no discovery related to that buy from this Defendant." *Id.* Finally, Defendant characterizes the CI's statement to Agent Juarez that there were firearms at 806 W. 11th Street as a "conclusory allegation" because Agents ultimately did not find any firearms at that residence. *Id.* at 6-7. Related to this last ground in support of the Motion to Suppress, Defendant asserts that "[t]he affidavit continues to present conclusory

4

allegations about 'investigations and surveillance' of Defendant's family and their individual residences." *Id.* at 6.

The United States argues that Defendant has failed to make the required showing under *Franks* that Agent Juarez's affidavit contained "any knowing false statements, let alone any 'intentional or reckless false statements.'" (Doc. 28) at 4 (quoting *United States v. Kennedy*, 131 F.3d 1371, 1376 (10th Cir. 1997)). The United States asserts that Defendant's "allegations of falsity are conclusory and not accompanied by an offer of proof." (Doc. 28) at 4. The United States also points out that the evidence that supports the charges in this case was found in the Toyota truck, and "Defendant makes no offer of proof challenging the affidavit's allegations regarding the Toyota." *Id.* The Court agrees with the United States that Defendant has not made the required showing under *Franks* to obtain an evidentiary hearing.

Under *Franks*, a defendant may raise a Fourth Amendment claim by challenging the veracity of a search warrant affidavit under specific, limited circumstances. There are two parts to the *Franks* analysis. First, the search warrant affidavit is presumed to be valid, but a defendant is entitled to an evidentiary hearing concerning its veracity if the defendant sets forth "allegations of deliberate falsehood or of reckless disregard for the truth," which "must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Franks*, 438 U.S. at 171.

The defendant's allegations:

> must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the *affiant*, not of any nongovernmental informant.

*Id.* (emphasis added). The Tenth Circuit has emphasized that speculation alone is insufficient to entitle a defendant to a hearing under *Franks*; there must be "*evidence* that the allegations of the affidavit are false." *United States v. Long*, 774 F.3d 653, 662 (10th Cir. 2014). Further, the United States Supreme Court in *Franks* explicitly recognized that there might be facts in a search warrant affidavit that are not "necessarily correct," but that those facts must be "believed or appropriately accepted by the *affiant* as true" to pass muster under the Fourth Amendment. *Franks*, 438 U.S. at 165 (emphasis added). In other words, the question in a case like this is not whether the CI lied to Agent Juarez, but, instead, is whether Agent Juarez lied about the CI's "existence or statements, or knew that the informant was lying." *United States v. Williams*, 576 F.3d 1149, 1162 (10th Cir. 2009).

Second, if the defendant meets the above requirements, the Court must then set aside the material "that is the subject of the alleged falsity or reckless disregard" and consider whether the affidavit would still support a finding of probable cause to conduct the search. *Id.* at 171-72. The Court "must ask whether a warrant would have issued in a but-for world where the attesting officer faithfully represented the facts." *United States v. Herrera*, 782 F.3d 571, 575 (10th Cir. 2015). If the search warrant affidavit still supports a finding of probable cause without the false statements, no *Franks* evidentiary hearing is required. *See Franks*, 438 U.S. at 172. However, if the search warrant affidavit does not support a finding of probable cause with the false statements excised, then the defendant is entitled to a *Franks* evidentiary hearing. *Id.*

A. *Defendant Has Not Made a Sufficient Showing of an Intentional or Reckless Falsehood*

Turning to this case, the Court considers each of Defendant's allegations of falsity in the affidavit. First, Defendant argues that the CI's statement that Defendant has several residences where he stores large amounts of narcotics is false because no facts in the affidavit support that

statement. (Doc. 26) at 6. This allegation of falsity is simply conclusory and speculative. To begin with, Defendant does not provide an offer of proof showing how this statement about the residences was false at the time the CI made it other than to note that Agents later did not find narcotics in any of the three residences they searched as part of the investigation of this case. Defendant has not shown, or even argued, either that Agent Juarez knew the CI was lying about the residences when the CI told him about the residents several days prior to the execution of the residential search warrants, or that Agent Juarez himself lied about the CI stating that Defendant has several residences where he stored large amounts of narcotics. Although Agent Juarez indicated in the affidavit that he found the CI to be trustworthy, Defendant does not give any reason why Agent Juarez should not have trusted the CI's statement about the residences. Moreover, Defendant does not provide any affidavits or sworn or otherwise reliable statements to support his claim that the CI's statement about the residences was false when he made it nor does Defendant explain the absence of such affidavits or statements.

Finally, Defendant's argument that the affidavit does not contain any facts to support the CI's statement about the residences does not, in itself, challenge the veracity of the CI's statement. Rather, that argument challenges whether Agent Juarez had probable cause to search the Toyota truck. While *Franks* provides a means for a defendant to challenge the veracity of a search warrant affidavit, it does not provide an avenue to challenge a search warrant affidavit on other grounds, such as lack of probable cause. For all of the above reasons, Defendant has not demonstrated that Agent Juarez's reference to the CI's statement about the residences with large amounts of narcotics stashed in them was deliberately false or made with reckless disregard for the truth.

Second, Defendant appears to argue that the controlled buy never happened, because "there are no details in the affidavit about what amount was purchased and for how much," and the United States did not provide any discovery to Defendant concerning the controlled buy. (Doc. 26) at 6. Defendant does not provide, however, an offer of proof that the controlled buy never happened. In addition, Defendant does not provide affidavits or sworn or otherwise reliable statements to demonstrate that the controlled buy did not occur nor does Defendant explain why he did not submit such affidavits or statements. Defendant, also, does not assert that Agent Juarez was lying about the controlled buy, much less that the Agents who observed the controlled buy were also lying. Again, Defendant has failed to show that Agent Juarez's statements about a controlled buy in the affidavit were deliberately false or provided with reckless disregard for the truth.

Third, Defendant alleges that the CI's statement that there were firearms at 806 W. 11th Street was false because the Agents did not subsequently recover any firearms from that residence. (Doc. 26) at 6. In making this allegation, Defendant contends also that the affidavit has "conclusory allegations about 'investigations and surveillance' of Defendant's family and their individual residences." *Id.* The United States interprets this last contention as alleging that Agent Juarez's statement in the affidavit about prior investigations and surveillance of Defendant's family and their residences was false as well. (Doc. 28) at 4. Conclusory allegations of investigations and surveillance do not, however, necessarily suggest that the investigations and surveillance never happened. Even if Defendant contends that Agent Juarez lied about the occurrence of those investigations and surveillance, Defendant, again, provides no proffer of evidence or evidence to support an allegation that Agent Juarez lied about the investigations and surveillance. Moreover, Defendant has not provided an explanation for the

8

absence of such evidence. Consequently, Defendant has not sufficiently demonstrated that Agent Juarez's statement about investigations and surveillance was deliberately false or made with reckless disregard for the truth.

Furthermore, although Agents did not find firearms at 806 W. 11th Street, as with the CI's statement about narcotics in residences and the later failure to find such narcotics, the inquiry is whether Agent Juarez knew at the time the CI made the statement to him about firearms at 806 W. 11th Street that the statement was false, or whether Agent Juarez simply lied about the CI's statement regarding firearms at 806 W. 11th Street. Defendant does not provide an offer of proof or any evidence that Agent Juarez either knew the CI was lying at the time he made the statement about the firearms at 806 W. 11th Street or that Agent Juarez lied about the CI stating that firearms were present at 806 W. 11th Street. In the absence of that proffer or evidence or an explanation for the absence of that evidence, Defendant has failed to show that Agent Juarez's reference to the CI's statement about firearms at 806 W. 11th Street was deliberately false or made with reckless disregard for the truth.

In sum, Defendant has not shown that Agent Juarez's search warrant affidavit contains any deliberately false statements or statements made with reckless disregard for the truth. For that reason alone, Defendant is not entitled to a *Franks* evidentiary hearing.

      B.     *Even Without the Allegedly False Statements, the Search Warrant Affidavit Supports a Finding of Probable Cause to Search Defendant's Toyota Truck*

Even if the Court determines that Defendant provided sufficient evidence of deliberately false statements in the search warrant affidavit or evidence of statements made with reckless disregard for the truth, and the Court excises those statements from the search warrant affidavit, the search warrant affidavit still supports a finding of probable cause to search the Toyota truck. The Court engages in this analysis although Defendant does not "assert that, with such

[intentionally or recklessly false] misstatements or omissions rectified, the affidavit would *not* support a finding of probable cause." *United States v. Cooper*, 654 F.3d 1104, 1129 (10th Cir. 2011) (emphasis added).

Probable cause to search exists when a search warrant affidavit provides "a substantial basis to conclude that there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Long*, 774 F.3d at 658 (internal quotation marks and citations omitted). Here, Agent Juarez attested to the reliability and credibility of the CI and outlined the CI's history of cooperation with the Chaves County Metro Narcotics Task Force, including purchases of controlled substances. (Doc. 38-1) at 3. Agent Juarez also stated that the CI was "familiar with the appearance of [m]ethamphetamine and how it is packaged and sold." *Id.* According to Agent Juarez, the CI told him that he or she witnessed Defendant selling methamphetamine from his vehicle. *Id.* Agent Juarez further attested that Agents saw Defendant driving the 2008 Toyota truck that was the subject of the search warrant. *Id.* at 4. These facts, when viewed as a whole, indicate that there was a fair probability that Agents would find a controlled substance and other related items in the Toyota truck. *Id.* at 3-4. Hence, even after excising the statements at issue in the Motion to Suppress from the search warrant affidavit, the affidavit establishes probable cause to search the Toyota truck for drugs and associated items.

### III. Conclusion

For the foregoing reasons, the Court concludes that Defendant has not presented evidence that Agent Juarez lied or knew the CI was lying when Agent Juarez executed the search warrant affidavit. The Court also concludes that even without the statements at issue in the search warrant affidavit, the affidavit still supports a finding of probable cause to search the 2008

Toyota truck for drugs and related objects. Defendant is not entitled, therefore, to a *Franks* evidentiary hearing. Consequently, the Court will deny the Motion to Suppress.

IT IS ORDERED that

1. the Motion to Vacate Hearing and Rule on the Pleadings (Doc. 38) is denied as moot; and

2. Defendant's Motion to Suppress Illegally Obtained Evidence (Doc. 26) is denied.

_____
UNITED STATES DISTRICT JUDGE