IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

    vs.                                                        No. CR 18-2212 KG

**JOSE VELARDE-PAVIA**,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the United States' Motion to Allow Expert Witness Testimony, filed April 16, 2019, an Amended Motion to Allow Expert Witness Testimony, filed April 19, 2019, and a Notice of Second Amended Motion to Allow Expert Witness Testimony, filed May 17, 2019 (collectively, Motion to Admit). (Docs. 81, 90, and 122).[1] Defendant Jose Velarde-Pavia (Defendant) filed his cross Motion to Exclude or Limit Expert Testimony and, in the Alternative, a *Daubert* Hearing (Motion to Exclude), on April 18, 2019, but did not formally respond to any iteration of the United States' Motion to Admit. (Doc. 86). The United States filed its response to Defendant's Motion to Exclude on April 26, 2019. (Doc. 101). Having considered the record, the briefing, and the applicable law, the Court grants the Motion to Admit and denies the Motion to Exclude.

I.     Background

The Court addressed the factual background of this case in the contemporaneously filed Memorandum Opinion and Order denying Defendant's Second Motion to Suppress, and will not repeat the same herein.

---

[1] The Court denied Doc. 81 as moot in light of the United States' subsequent filings at Docs. 90 and 122.

The United States intends to call the following expert witnesses at trial:

1. Andrew Barber, Supervising Scientist, New Mexico Department of Public Safety Forensic Laboratories. Expected to testify regarding examination of white crystalline substance seized in this case using various tests, including determination that the substance was methamphetamine weighing $125.662 \pm 0.008$g net weight, with purity of $89 \pm 3\%$, and confidence level of 95.45%.

2. Laura Gaydosh-Combs, Forensic Scientist 2, New Mexico Department of Public Safety Forensic Laboratories. Expected to testify regarding her technical review of another forensic scientist's DNA analysis of the handgun and the plastic baggie found in the truck. Handgun revealed DNA mixture of at least five individuals and no interpretation could be made. Baggie revealed partial DNA mixture of at least two individuals and no interpretation could be made.

3. Matthew Kepp, Forensic Scientist, New Mexico Department of Public Safety Forensic Laboratories. Expected to testify regarding a Firearm Function Test of the handgun he conducted and that the firearm was functional when test fired.

4. Bonnie Knoll, Forensic Scientist, New Mexico Department of Public Safety Forensic Laboratories. Expected to testify regarding Latent Print/AFIS examination she conducted of the handgun and the bullet magazine, including visual inspection, and reasons why no latent impressions were found or developed.

5. Joseph Montoya, Special Agent, Drug Enforcement Administration. Expected to testify regarding the value of methamphetamine seized in this case and the means/methods of drug traffickers, not including the use of cellphones.

(Doc. 81) at 4-6; (Doc. 90) at 2 (amending Knoll's disclosure to include reasons latent prints may not have been found); (Doc. 90) at 6-7 (amending value of methamphetamine for SA Montoya's testimony; removing testimony regarding cell phones); (Doc. 122) (substituting Andrew Barber for originally disclosed expert, Alex Moninger, as Ms. Moninger will be unavailable for trial).

II.     <u>Analysis</u>

Defendant seeks to exclude or limit SA Montoya's testimony and to "exclude any testimony that states an opinion, directly or by implication, that [Defendant] had the mental state alleged in the charged offenses." (Doc. 86) at 1.

The proponent of expert testimony bears the burden of proving the foundational requirements of Federal Rule of Evidence 702 by a preponderance of the evidence. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). Rule 702 requires:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Each expert's opinions are subject to the same standard of reliability that govern the opinions of strictly scientific experts retained for the purposes of litigation. *See Kumho Tire*, 526 U.S. at 151 (holding *Daubert* applies even when expert's opinion relies on skill or experience-based observation).

Rule 702 uses a liberal definition of "expert." "[T]he expert is viewed, not in a narrow sense, but as a person qualified by 'knowledge, skill, experience, training or education.'" Fed. R. Evid. 702 Advisory Committee's Note (1972). In other words, "the expert . . . should not be required to satisfy an overly narrow test of his own qualifications." *Gardner v. Gen. Motors Corp.*, 507 F.2d 525, 528 (10th Cir. 1974) (internal quotation omitted). A witness may qualify as an expert under Rule 702 even if "the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 782 (3d Cir. 1996) ("Who is 'best' qualified is a matter of weight upon which reasonable jurors may disagree."). "As long as an expert stays 'within the reasonable confines of his subject area,' our case law establishes 'a lack of specialization does not affect the admissibility of [the expert] opinion, but only its

3

weight.'" *Ralston*, 275 F.3d at 970 (quoting *Compton v. Subaru of America, Inc.*, 82 F.3d 1513, 1519-20 (10th Cir. 1996)).

Rule 702 and *Daubert*/*Kumho* require trial courts to act as gatekeepers by ensuring all expert testimony, whether scientific, technical, or based on any other specialized knowledge, is both reliable and relevant. *Kumho Tire*, 526 U.S. at 152-53. The court must first determine whether the proposed expert is qualified by knowledge, skill, experience, training, or education to render the opinion. Second, the court must determine whether the expert's opinions are sufficiently reliable. Fed. R. Evid. 702; *Kumho Tire*, 526 U.S. at 152-53; *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 969 (10th Cir. 2001). Finally, the court must determine whether the proposed expert testimony will assist the trier of fact "to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702.

District courts have broad discretion in determining the admissibility of expert testimony. *Taylor v. Copper Tire & Rubber Co.*, 130 F.3d 1395, 1397 (10th Cir. 1997).

A. *SA Montoya's Testimony is Admissible*

Defendant contends that SA Montoya's testimony principally serves to "bolster [the United States'] case by asking the jury to infer that because people in other drug trafficking situations possessed cash, handguns, and cell phones," and Defendant also possessed those things and methamphetamine, that Defendant "was necessarily intending to distribute the methamphetamine." (Doc. 86) at 5.

In support of this contention, Defendant makes two arguments that are now moot. First, Defendant argues SA Montoya's proposed testimony regarding the value of the seized methamphetamine would not be helpful because the United States initially disclosed this testimony based on the value of methamphetamine in *Las Cruces*, New Mexico, several hundred

4

miles away from *Roswell*, New Mexico. (Doc. 86) at 4. The United States subsequently amended its expert disclosure and rectified this error. (Doc. 90) at 6-7. Defendant did not respond to the United States' Amended Motion and has not filed any subsequent motions related to SA Montoya.

Second, Defendant objects to SA Montoya's proposed testimony that drug traffickers frequently conduct business via cellphones. (Doc. 86) at 4. The United States withdrew the proposed testimony regarding cellphones in its Amended Motion. (Doc. 90) at 1.

Because the United States remedied these issues and the Defendant does not object, the Court finds these objections to be moot.

Next, Defendant argues New Mexico jurors have sufficient exposure to the means and methods of drug trafficking so as to render expert testimony on these points unnecessary. (Doc. 86) at 5. Relatedly, Defendant contends SA Montoya's testimony "would improperly lead the jury to infer the [D]efendant's guilt based on the conduct of unrelated persons and improperly bolster the testimony of the prosecutor's other witnesses." (*Id.*) at 6. Even if the Court deems the testimony relevant, Defendant urges the Court to exclude SA Montoya's testimony for improperly invading the province of the jury. (*Id.*) Defendant argues SA Montoya's testimony does not qualify under *Daubert* as it more closely resembles an impermissible profile of drug traffickers than expert testimony, and SA Montoya's testimony has not been subject to peer review. (*Id.*) at 7-8. Finally, Defendant contends SA Montoya should be excluded under Rule 403, on the basis that his testimony's unfairly prejudicial effect substantially outweighs its probative value. (*Id.*) at 8. Should the Court reject these arguments, Defendant moves to limit SA Montoya's testimony, and prohibit him "from testifying, directly or functionally, regarding

[Defendant's] alleged intention to distribute the methamphetamine under the guise of presenting testimony about how persons in the drug trade 'generally' operate." (*Id.*) at 9.

The Tenth Circuit has "consistently allowed law enforcement agents to provide expert testimony concerning the drug trade under Rule 702." *United States v. Mendoza*, 236 Fed. Appx. 371, 381 (10th Cir. 2007) (citing *United States v. Quintana*, 70 F.3d 1167, 1170-71 (10th Cir. 1995) (meaning of drug code); *United States v. Sturmoski*, 971 F.2d 452, 459 (10th Cir. 1992) (tools of the drug trade); *United States v. McDonald*, 933 F.2d 1519, 1520-23 (10th Cir. 1991) (significance of quantity of cocaine, tools of drug trade and use of food stamps to purchase crack cocaine); *United States v. Harris*, 903 F.2d 770, 775-76 (10th Cir. 1990) (drug records)).

The Court finds SA Montoya's testimony on the usual practice and methods of drug traffickers relevant to assist the jury in contextualizing and interpreting the other evidence, including, but not limited to, the jury's consideration of the quantity of methamphetamine seized, its location in the truck, and the presence of firearms. SA Montoya's testimony regarding the value of methamphetamine in Roswell in June 2018, and the tools and methods of the drug trade, do not improperly invade the jury's province as factfinder, and that testimony relates to facts of consequence in the case.

The next question, then, is whether SA Montoya's testimony is reliable. As noted above, *Daubert* does not constitute a rigid framework demanding trial courts "woodenly" apply the factors in cases where subject matter expertise comes through training and experience. *United States v. Garza*, 566 F.3d 1194, 1199 (10th Cir. 2009).

In *Garza*, the Tenth Circuit addressed a criminal defendant's objection to law enforcement testimony about how a gun could be used because "no conceivable 'science' could illuminate 'how an inanimate object such as a gun was or may be used.'" 566 F.3d at 1199

6

(quoting Aplt. Br. at 8). The *Garza* Court rejected defendant's argument on the basis that a law enforcement officer's "expert opinion was not improper simply because it was not scientific." *Id.*

Here, SA Montoya has been a Drug Enforcement Administration Special Agent since 1999 and has participated in over 500 criminal drug investigations. (Doc. 81-5) at 1. He served as an undercover agent in over 200 investigations. (*Id.*) The Court finds that SA Montoya is qualified by training and experience to opine on the nature of drug trafficking, including the means and methods employed to commit drug trafficking crimes. Furthermore, his proposed testimony stems from personal experience in over 500 criminal drug investigations, that is, his opinions are based on sufficient facts and experience. While this testimony is not scientific and therefore not amenable to a peer review or other objective testing process, the Court finds that SA Montoya's testimony regarding the nature of drug trafficking is sufficiently reliable to reach the jury. Any issues with SA Montoya's testimony may be grounds for cross-examination which go to the weight, rather than the admissibility, of his testimony.

Federal Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury . . . or needlessly presenting cumulative evidence." Although Defendant contends SA Montoya's testimony would be overly prejudicial, the Tenth Circuit has "consistently allowed" this type of testimony. *Mendoza*, 236 Fed. Appx. at 381. The Court is not persuaded that SA Montoya's testimony would be unfairly prejudicial.

Finally, Federal Rule of Evidence 704(b) provides:

> No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element

7

of the crime charged or a defense thereto. Such ultimate issues are matters for the trier of fact alone.

The Court lacks sufficient information at this stage to rule on whether SA Montoya's testimony violates Rule 704(b). Therefore, the Court will deny Defendant's Motion on this point without prejudice. Defendant may raise any objections at trial that he deems necessary.

B. *The United States' Other Experts May Testify*

The Court notes that Defendant does not object to any other expert testimony offered by the United States, except to the extent that such testimony may encompass the Defendant's mental state under Rule 704(b). As with SA Montoya, Defendant may raise Rule 704(b) objections at trial as necessary.

Andrew Barber, a forensic scientist with over ten years of experience in that role and an additional fifteen years of experience as a research chemist, will testify regarding the tests he personally performed on the crystalline substance in this matter. The Court finds that Mr. Barber's testimony reliable in that he is qualified by training, education, and experience to opine as proposed, his testimony is based on sufficient facts and data, is the product of reliable principles and methods, and he has reliably applied the principles and methods to the facts of this case. Furthermore, the Court finds Mr. Barber's testimony to be relevant because it will assist the jury in understanding the evidence and determining material facts in issue, namely, the quantity of the substance seized from Defendant and whether the substance was in fact methamphetamine.

Laura Gaydosh-Combs earned her Ph.D. in Biomedical Sciences, Molecular and Medical Genetics from the University of North Texas Health Science Center. (Doc. 81-2). She has been a forensic scientist, focused on serology and DNA, since 2016. (*Id.*) Dr. Gaydosh-Combs will testify regarding her technical review of DNA analysis of the handgun and plastic baggie,

specifically that DNA was found on both but could not be interpreted.  The Court finds that Dr. Gaydosh-Combs's testimony is reliable in that she is qualified by training, education, and experience to opine as proposed, her testimony is based on sufficient facts and data, is the product of reliable principles and methods, and she has reliably applied the principles and methods to the facts of this case.  Furthermore, the Court finds Dr. Gaydosh-Combs's testimony to be relevant because it will assist the jury in understanding the evidence, specifically, why DNA evidence found on contraband seized from Defendant's vehicle could not be analyzed.

Matthew Kepp holds a Master's Degree in Forensic Science from Towson University.  (Doc. 81-3).  He has worked as a forensic scientist since 2016, and previously worked as a forensic specialist and a crime laboratory technician.  Mr. Kepp will testify regarding a Firearm Function Test that he performed on the handgun seized from Defendant's truck.  The Court finds that Mr. Kepp's testimony is reliable in that he is qualified by training, education, and experience to opine as proposed, his testimony is based on sufficient facts and data, is the product of reliable principles and methods, and he has reliably applied the principles and methods to the facts of this case.  Furthermore, the Court finds Mr. Kepp's testimony to be relevant because it will assist the jury in understanding the evidence and determining a fact in issue, specifically, whether the handgun meets the legal definition of a "firearm."

Bonnie Knoll has been a latent print examiner for approximately twenty years.  (Doc. 81-4).  Ms. Knoll will testify regarding the Latent Print/AFIS examination she conducted on the handgun and bullet magazine found in Defendant's vehicle, including why no latent impressions were found or developed.  The Court finds that Ms. Knoll's testimony is reliable in that she is qualified by training and experience to opine as proposed, her testimony is based on sufficient facts and data, is the product of reliable principles and methods, and she has reliably applied the

principles and methods to the facts of this case. Furthermore, the Court finds Ms. Knoll's testimony to be relevant because it will assist the jury in understanding the evidence, specifically, why no latent prints were found or developed from the handgun or the magazine.

Having considered each of the United States' proposed experts and having conducted its gatekeeping function under *Daubert* and *Kumho Tire*, the Court concludes that the United States' proposed experts may testify as designated, and that each expert's testimony is reliable and relevant.

III. Conclusion

For the reasons explained above, the United States' Motion to Admit is granted and its experts may testify as proposed, including the modifications addressed throughout the United States' filings. Defendant's Motion to Exclude is denied.

IT IS, THEREFORE, ORDERED that

1. The United States' Amended Motion to Allow Expert Witness Testimony, filed April 19, 2019, and Notice of Second Amended Motion to Allow Expert Witness Testimony, filed May 17, 2019 (Docs. 90 and 122), are granted; and

2. Defendant's Motion to Exclude or Limit Expert Testimony and, in the Alternative, a *Daubert* Hearing, filed April 18, 2019 (Doc. 86) is denied without prejudice to Defendant's ability to raise trial objections.

_____
UNITED STATES DISTRICT JUDGE