IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

    vs.                                                No. CR 18-2212 KG

**JOSE VELARDE-PAVIA**,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Jose Velarde-Pavia's Motion to Suppress Statements, filed August 22, 2019. (Doc. 165). Defendant seeks to suppress one question and one answer from his exchange with officers on-scene. (*Id.*) The United States filed its response on August 23, 2019 (Doc. 170), and the Court held a hearing on this matter on August 23, 2019 (*see* Doc. 172 (clerk's minutes)). As stated at the hearing, Defendant's Motion to Suppress is granted.

This case involves a felony stop based entirely on a search warrant. Agent Salas' body cam video, accepted as Exhibit 1 at the suppression hearing, shows at least five officers approaching Defendant and his vehicle with guns drawn. Officers instruct Defendant to walk backwards toward them, order Defendant to his knees, and handcuff him. Defendant appears to be compliant and noncombative. The parties agree that no reasonable person would have felt free to leave the scene.

While the video footage comes from Agent Salas' perspective, the audio and accompanying transcript pick up out-of-frame conversations. Indeed, while Agent Salas and another officer approach Defendant's truck and spot a firearm in plain view, the audio and transcript reflect a Spanish-language conversation between Agent Arroyo (as identified in the

transcript) and Defendant. Agent Juarez, who is not visible on camera but is identified in the transcript, informs Defendant that he has been stopped pursuant to a drug-related search warrant.

After some static interference, the next clear thing heard on the audio is Agent Arroyo asking Defendant if he has anything on him. Agent Arroyo does not specify whether "anything" means drugs or weapons, and does not specify whether his question is limited to any weapons Defendant may have on his person. Defendant responds in the affirmative, meaning he does have something on him, and states that he has personal use "hielo" or "ice" on him.

At this point, Agent Juarez speaks up and suggests that officers *Mirandize* the Defendant "before he starts talking." Another voice, identified in the transcript as Agent Mahone, agrees with Agent Juarez and suggests that the Defendant be *Mirandized* so that officers can ask him questions. Despite this discussion, no one reads the Defendant any kind of *Miranda* warning or otherwise advises him of his rights.

Agent Juarez proceeds to squarely ask Defendant if he has any drugs. Defendant again says yes. Agent Brackeen, identified by name in the transcript, begins patting down the Defendant and asks if he has anything in the truck. Defendant says no. A few moments later, after Agent Brackeen pats down the Defendant and checks his pockets, Agent Arroyo lifts the Defendant's shirt and visually inspects his waistband. Agent Arroyo then asks the Defendant if he has any firearms. Defendant says that he has only the one firearm, but does not identify the firearm's location. Agent Arroyo follows up this question by asking if Defendant has any firearms "in [his] boots or anything like that," to which the Defendants says no.

The only question for the Court is whether Agent Arroyo's question about firearms constitutes a custodial interrogation such that the question and answer must be suppressed.

When a criminal defendant files a Fourth or Fifth Amendment-based motion to suppress, the United States bears the burden of showing, by a preponderance of the evidence, that the criminal defendant's rights were not violated. *United States v. Matlock*, 415 U.S. 164, 177 (1974). However, "[t]he proponent of a motion to suppress has the burden of adducing facts at the suppression hearing indicating that his own rights were violated by the challenged [conduct]." *United States v. Eckhart*, 569 F.3d 1263, 1274 (10th Cir. 2009) (quotation omitted). In ruling on a motion to suppress, courts must view the facts in the light most favorable to the United States. *United States v. Matthews*, 458 Fed. Appx. 717, 722 (10th Cir. 2012) (citing *United States v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002)).

Under the Fifth Amendment, a *Miranda* warning is required when a defendant is "interrogated" while in custody. *United States v. Revels*, 510 F.3d 1269, 1273 (10th Cir. 2007). "Whether a suspect is in custody represents an objective determination." *United States v. Jones*, 523 F.3d 1235, 1239 (10th Cir. 2008). The Supreme Court held in *Berkemer v. McCarty* that custodial interrogations are those in which the defendant's "freedom of action is curtailed to the degree associated with a formal arrest." 468 U.S. 420, 441 (1984).

Nonetheless, a public-safety exception exists for the *Miranda* requirement, such that officers may ask questions of a suspect in custody without providing a *Miranda* warning, so long as those questions are related to public and/or officer safety. *New York v. Quarles*, 467 U.S. 649, 655-56 (1984); *United States v. Lackey*, 334 F.3d 1224, 1226-27 (10th Cir. 2003). "[T]he availability of [the public-safety exception] does not depend upon the motivation of the individual officers involved." *Quarles*, 467 U.S. at 656. In cabining the exception, the Supreme Court stated that "police officers can and will distinguish almost instinctively between questions

necessary to secure their own safety or the safety of the public and questions designed solely to elicit testimonial evidence from a suspect." *Id.* at 658-59.

As a practical matter, the Tenth Circuit distinguishes between public-safety type questions and custodial interrogation questions based on whether a responsive answer would incriminate a suspect. *Lackey*, 334 F.3d at 1228. Thus, the practical consideration becomes whether the "risk of incrimination is limited to non-responsive answers," for example, cases where a suspect provides more information than requested. *Id.* In those instances, the Tenth Circuit has determined that this is "not a risk particularly worthy of a prophylactic rule." *Id.*

For purposes of this motion, the Court need not determine whether Defendant was initially "in custody" within the meaning of *Miranda*. Instead, the crucial question is whether Agent Salas' question to Defendant, whether he had any firearms, constitutes a custodial interrogation. On the facts of this case, the Court concludes that Defendant was in custody, Defendant should have been *Mirandized*, and the public-safety exception does not apply.

Here, officers' questions shifted from investigatory and public-safety type questions after Defendant admitted to having "ice" – that is, methamphetamine – on his person, after officers noticed a visible firearm in his truck. Indeed, officers had largely patted Defendant down before asking him if he had any firearms. More telling, two of the officers on scene recognized that Defendant needed to be *Mirandized*, as further questions would constitute a custodial interrogation subject to the *Miranda* requirement.

Agent Arroyo's question was sufficiently vague and inartful, under the circumstances of this case, that it would reasonably elicit responsive and incriminating information. Based on the circumstances described above, the Court concludes the Defendant was in custody within the meaning of *Miranda*, and Agent Arroyo's question constituted custodial interrogation.

Therefore, because the Defendant was not *Mirandized* prior to this question, the question and the Defendant's response must be suppressed.

    IT IS SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE